UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

ALEXANDRIA DIVISION

| | | |
|---|---|---|
| NICHOLAS S. BERRYMAN, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | Misc. No. 1:16-mc-00001-CMH-IDD |
| | ) | |
| DEPARTMENT OF DEFENSE, | ) | |
| | ) | |
| Respondent. | ) | |

DEPARTMENT OF DEFENSE'S RESPONSE IN OPPOSITION TO
MOTION TO QUASH SUBPONEAS

This is the Department of Defense's ("DoD") response to Master Chief Petty Officer

(MCPO) Nicholas S. Berryman's ("Berryman") Motion for Orders Pursuant To Customer

Challenge Provisions of the Right to Financial Privacy Act of 1978.  Docket No. 1.  This

response is supported by an accompanying declaration ("Flores Decl.")[1] that will be submitted in

camera pursuant to 12 U.S.C. §3410(b) because it reveals sensitive details of an active law

enforcement investigation into allegations of larceny, misappropriation and frauds on the United

States.  The effectiveness of the investigation would likely be undermined if the details

concerning its status and scope and future investigative activity disclosed in the declaration were

revealed.

---

[1] The Flores Decl. will be lodged *in camera* under 12 U.S.C. §3401(b) and in a sealed envelope
with the Clerk's Office in accordance with Local Civil Rule 5(E) as Exhibit A to the
contemporaneously filed Department of Defense's Motion to Seal Declaration.

INTRODUCTION

On December 12, 2015, the DoD Office of Inspector General ("DoD OIG") approved the issuance two DoD OIG subpoenas *duces tecum* ("Subpoenas"), at the request of and in support of a United States Army Criminal Investigative Command ("CID") investigation, which CID[2] intends to serve on two different financial institutions seeking the personal financial records of Berryman. The Subpoenas were issued pursuant to authority conferred on the DoD OIG under §6(a)(4) of the Inspector General Act of 1978, as amended, 5 U.S.C. app. 3, §§1-13 (the "IG Act"), and in accordance with the Right to Financial Privacy Act of 1978, 12 U.S.C. §§3401-22 (the "RFPA"). The DoD IG administrative subpoena at issue in this Court is to be issued to Navy Federal Credit Union. Exhibit B.[3]

The IG Act authorizes the DoD OIG to issue subpoenas at the request of and in support of audits and investigations conducted by other DoD audit and investigative entities. *See United States v. Westinghouse Electric Co.*, 788 F. 2d 164, 171 (3rd Cir. 1986) ("To summarize, we hold that the [DoD] Inspector General had the statutory authority to issue a subpoena at the request of DCAA [Defense Contract Audit Agency], so long as he did so in furtherance of a purpose within his statutory authority and exercised some independent judgment in deciding to issue the subpoena.").

---

[2]   CID is the investigative arm of the U.S. Army and its special agents are federal law enforcement officers. *See* 10 U.S.C. §4027.

[3]   Berryman has made a contemporaneous challenge to the other DoD IG administrative subpoena to be issued for bank records of the DOD Overseas Military Banking Community Bank. That challenge was filed in the United States District Court for the Western District of Texas. Civil No. SA16mc0004RP.

The Subpoena to be issued to Navy Federal Credit Union seeks Berryman's financial records in connection with an ongoing investigation to determine whether he violated Uniform Code of Military Justice ("UCMJ"), 10 U.S.C. §801, *et seq*., Article 121, Larceny and wrongful appropriation (codified at 10 U.S.C. §921), and Article 132, Frauds against the United States (codified at 10 U.S.C. §932).  *See* Flores Decl. ¶2.

On January 4, 2016 Berryman filed a Motion for Order Pursuant To Customer Challenge Provisions of the Right to Financial Privacy Act Of 1978, § 3410(a) ("Motion"). Exhibit B.

Berryman's motion raises six grounds:

 (1) Financial Right to Privacy allows for refusal to consent.  Also, the bank customer's spouse (joint tenant in accounts listed) is neither a member of the U.S. Military nor party to this case, negating any legal cause to permit disclosure of personal and private bank account activities

 (2) Privilege-Spouse
[T]his subpoena seeks privileged information as the named bank customer's joint tenant is a spouse and therefore rejects this subpoena as violation of spouse privilege to not participate, give testimony or produce any written documents.  The spouse will not be compelled to participate in disclosure of any requested bank account activities listed in the subpoena

(3) Fourth Amendment Rights
Assert this subpoena [is] a violation of the named bank account customer and the joint tenant customer's rights

(4) Gramm-Leach-Bliley Act ("GLBA")
this subpoena seeks production of bank customers' "nonpublic information" in contravention of GLBA

(5) Defective –
Parts of this subpoena are defective according to both Federal and the State of Virginia's laws.
Defects[:] []
distance to appear exceeds 150 miles travel[;]
[excessive burden, [e]xpenses[;]
[a] subpoena for a witness to attend a hearing or trial must be issued from  the district court where the hearing or trial will be held.  FED. R. CIV. P. 45(a)(2)(A)

(6) Procedure

- 3 -

Federal Rules of Civil Procedure.
Improper Service. The document received shows no date of service or mail certification to the recipient initiating a 10 day period to reply and refuse consent. Rules for issuing and servicing a subpoena to a U.S. national or resident who is in a foreign country. FED. R. CIV. P. 45(b)(3); 28 U.S.C. § 1783. The named bank customer resides in Germany.

As explained below, under the RFPA, §3410(c), there is "a demonstrable reason to believe that the law enforcement inquiry is legitimate." Indeed, investigating larceny and misappropriation of Government funds by active duty military service members, as well as the alleged commission of frauds against the United States by active duty military service members, falls squarely within the DoD OIG's authority to investigate "fraud, waste, and abuse" under the IG Act. *See* IG Act, §8(c)(1), (2), (4). *See also id.*, §§4(a)(1), (2), (3), (5), and 8(c)(3). There is also a "reasonable belief that the records sought are relevant to that inquiry," as bank records from Berryman during the period in which the Government paid him Overseas Housing Allowance (OHA) would inform the ongoing criminal investigation about Petitioner's receipt and retention of unauthorized payments. *See generally* Flores Decl. ¶¶ 2, 3.

## RIGHT TO FINANCIAL PRIVACY ACT

A.   Use of an administrative subpoena to obtain financial records.

The RFPA authorizes a federal government entity to obtain financial records through the use of an administrative subpoena otherwise authorized by law, only if:

(1) there is reason to believe that the records sought are relevant to a legitimate law enforcement inquiry;

(2) a copy of the subpoena has been served upon the customer[4] or mailed to his last known address on or before the date on which the subpoena

---

[4] The term "customer" is defined at §3401(5) as "any person or authorized representative of that person who utilized or is utilizing any service of a financial institution, or for whom a financial institution is acting or has acted as a fiduciary, in relation to an account maintained in the

was served on the financial institution together with a notice outlining the customer's rights under the RFPA to challenge the subpoena; and

(3) ten days have expired from the date of service of the notice or fourteen days have expired from the date of mailing the notice to the customer and within such time period the customer has not filed a Customer Challenge in an appropriate federal district court.

§ 3405.

The RFPA defines "law enforcement inquiry" as "a lawful investigation or official proceeding inquiring into a violation of, or failure to comply with, any criminal or civil statute or any regulation, rule, or order issued pursuant thereto." § 3401(8)

B.   Customer challenge to a federal government entity's request for financial records.

The RFPA authorizes a customer to challenge a federal government order or request for records by filing, within ten days of service or within fourteen days of mailing of a subpoena, a motion to quash an administrative subpoena. § 3410. Such a motion shall contain an affidavit or sworn statement:

(1) stating that the applicant is a customer of the financial institution from which financial records pertaining to him have been sought; and

(2) stating the applicant's reasons for believing that the financial records sought are not relevant to the legitimate law enforcement inquiry cited by the Government in its Customer Notice, or that there has not been substantial compliance with the provisions of the RFPA.

§ 3410(a).

If the court finds that the customer has complied with the requirements of § 3410(a), it shall order the federal government entity seeking the financial records to file a sworn response.

---

person's name." The term "person" is defined at §3401(4) as "an individual or partnership of five or fewer individuals."

§ 3410(b).

C.     Criteria for evaluating a customer challenge.

The RFPA sets forth the following analytical framework for evaluating customer challenges:

If the court finds that there is *not*:

1. a demonstrable reason to believe that the law enforcement inquiry is legitimate, and

2. a reasonable belief that the records sought are relevant to that inquiry,

the court shall grant the customer's motion to quash.  § 3410(c).

If, on the other hand, the court finds that there *is*:

1. a demonstrable reason to believe that the law enforcement inquiry is legitimate, and

2. a reasonable belief that the records sought are relevant to that inquiry, the court shall deny the customer's motion to quash.  *Id.*

The challenge process described above is the sole judicial remedy available to a customer to oppose disclosure of financial records.  § 3410(e).  *See also SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 745-46 (1984) ("A customer's ability to challenge a subpoena is cabined by strict procedural requirements. . . . Perhaps most importantly, the statute is drafted in a fashion that minimizes the risk that customers' objections to subpoenas will delay or frustrate agency investigations.").

STATEMENT OF FACTS

On December 18, 2015, CID Special Agent Anthony Augustyn personally served Berryman with the: "(1) to Customer; (2) two Subpoenas; (3) Appendix A's; (4) Statement of

Customer Rights Under the Financial Privacy Act of 1978; (5) Instructions for Completing and Filing Motion and Sworn Statement; (6) blank Motion Forms; (7) two Customer's Sworn Statement for Filing a Challenge in the United States District Court; and (8) blank Certificates of Service." Flores Decl. ¶ 6. Berryman moved to quash the Subpoena to the Navy Federal Credit Union on January 6, 2016. Exhibit B.

Service of the Subpoena on the financial institution is being held in abeyance pending resolution of Berryman's challenge.

The investigation has revealed evidence that Berryman sought and received full OHA[5] benefits starting on October 1, 2013 through December 15, 2015. Flores Decl. ¶ 5. The investigation has further revealed that from December 9, 2014 through December 31, 2015, Berryman rented out a portion of his residence. Flores Decl. ¶ 5. However, based on The Federal Joint Travel Regulations (JFTR), a person renting out a portion of their residence would not be entitled to full OHA payments. Since Berryman was renting out a portion of his residence he was considered a "sharer[6]. OHA payments are divided "by the number of sharers occupying the dwelling." Therefore, Berryman would only be entitled to half of the full OHA amount for the period of time he was renting out part of his residence. Flores Decl. ¶ 5. As SA Flores

---

[5] OHA is a non-taxable allowance paid to Service members living in private housing at overseas duty stations. OHA helps offset housing costs, consisting of rent, utilities and recurring maintenance expenses, and move-in housing allowance. The amount of OHA depends, in part, on the location of residence, pay grade and whether the service member is claiming to live with or without dependents. OHA does not allow the Service member to receive a higher amount of OHA than the rent amount. For example, even though a Service member may be authorized OHA in the amount of $2,500 and their rent is only $2,000.00, that Service member will only receive OHA for $2,000." Flores Decl. ¶ 4.

[6] "[A] member who resides with one or more other persons, excluding the member's dependents, who contribute money toward the payment of rent, mortgage and/or utilities." JFTR, Chapter 10: Housing Allowances, Section 10000.

describes in his declaration, the bank records sought by the Subpoenas are necessary to the

investigation because:

a. The financial records will confirm the funds and income MCPO Berryman received from his tenants and possibly further identify additional tenants not currently identified.

b. The financial records will show the use, if any, of the improper funds, and whether any improperly received funds were returned.

c. The financial records will help demonstrate whether, when, and for what purposes the Berryman's withdrew the funds, which would tend to establish their knowledge of the funds and intent to deprive the Government.

d. The financial records will assist in tracing the funds the Berryman's fraudulently received thereby facilitating the Government's efforts to recover them.  The records will help demonstrate the total dollar amount lost to the Government.

e. The financial records will assist in confirming the dates of October 2013, through present, as these dates will assist in identifying the months in which MCPO Berryman received rental payments for the sublet apartment.  October 2, 2013 is the date MCPO Berryman signed the Overseas Housing Allowance Report to begin receiving Overseas Housing Allowance, and subsequently took possession of the residence.

Flores Decl. ¶ 7.


ARGUMENT

The Supreme Court has explained that a customer's ability to challenge a subpoena

under the RFPA is "cabined by strict procedural requirements."  *S.E.C. v. Jerry t. O'Brien,*

*Inc.*, 467 U.S. 735, 745 (1984).  Section 3410(c) provides three acceptable challenges that

can be raised by the customer: (1) the government's inquiry is not a legitimate law

enforcement inquiry, (2) the financial records sought are not relevant to a legitimate law

enforcement inquiry, or (3) the government has not substantially complied with the statute.

*See Sandsend Fin. Consultants v. Fed. Home Loan Bank Bd.*, 878 F.2d 875, 882 (5th Cir.

1989); *Allison v. U.S. Department of Justice Privacy Act of 1978*, 2015 WL 4773327 at *2

(W.D. Va. 2015)(same); *Rodriquez v. Social Security Administration*, 2014 WL 2960539 at

 *2 (E.D. Cal. 2014)(same and cases cited).

Berryman failed to raise any of the three grounds.  Notwithstanding the failure of Berryman to

challenge the legitimacy of the investigation, the relevance of the financial records or any failure

to comply with the statute, CID's investigation into allegations that Berryman fraudulently

claimed and received a housing allowance to which he was not entitled, in violation of UCMJ

Article 121, Larceny and wrongful appropriation, and Article 132, Frauds against the United

States, is a legitimate law enforcement inquiry; there is a reasonable belief that the records

sought relating to Berryman's receipt, retention, and expenditure of those fraudulently obtained

housing allowance funds are relevant to CID's inquiry; and there has been substantial

compliance with the RFPA.  *See Nelson v. Department of Defense*, Case No. 1:15mc-00034

(E.D. Va., Nov. 19, 2015)(copy attached); *Ward v. United States Dept. of Labor*,  2014 WL

4388580 at *3 (W.D. Tex. 2014)(explaining the limited role of the court).

   Finally, Berryman's spousal privilege, Fourth Amendment, Gramm-Leach-Bliley Act

 ("GLBA"), and federal and state law based asserted arguments are without merit.

   A.   Berryman's Motion to Challenge should be denied for failure to meet the
        threshold requirements of 12 U.S.C. §3410(a).

   Pursuant to 12 U.S.C. § 3410(a), a motion to quash a subpoena must be accompanied by

a sworn affidavit stating that the "records sought are not relevant to the legitimate law

enforcement inquiry . . . or that there has not been substantial compliance with the [RFPA] . . . ."

12 U.S.C. § 3410(a)(2).  If the movant's affidavit does not describe why the records sought are

not relevant to the law enforcement inquiry, the motion should be denied.  *See Theurer v.*

*Department of Defense*, No. 7:13-cv-142, 2013 WL 5327471, *3 (E.D.N.C. Sep. 20, 2013)

(denying motion to quash subpoena, in part, because the movant failed to meet initial

requirements under the RFPA).   In *Hancock v. Marshall*, 86 F.R.D. 209 (D.D.C. 1980), a case

principally relied upon by the district court in *Theurer*, *see* 2013 WL 5327471 at 3, the court

dismissed a motion to quash an administrative subpoena issued by the United States Department

of Labor because, pursuant to 12 U.S.C. § 3410(a)(2), the movant's affidavit was insufficient.

The *Hancock* court emphasized that "[t]he relevant legislative history is clear in its intention to

require adjudication of a customer's motion *only* when his affidavit presents a *prima facie* case

of impropriety."   *Id.*  (Emphasis added).

In this case, Berryman's affidavit fails to articulate why a search of his bank records is

not relevant to a legitimate law enforcement purpose or in the alternative, that the government

failed to comply with the procedural provisions of 12 U.S.C. § 3410.   In fact, the Court here,

analogous to the district court in *Hancock*, is "left guessing" as to why the government should

be precluded from a "review of [Berryman's] bank records."   *Id.* at 210.   In support of his

motion, Berryman only incorrectly invokes his rights under other federal and state laws and the

Constitution.   He makes no additional showing.   Because Berryman failed to meet his burden

of making an "initial showing" that the subpoena is improper, his motion should be denied on

this ground alone.   *Id.* at 211. (*quoting* H.R. Rep. No. 1383, 95th Cong., 2nd Sess. 53 (1978)

U.S. Code Cong. & Admin. News 1978, p. 9325).

    B.    <u>CID's investigation represents a "legitimate law enforcement inquiry" under the RFPA because investigating larceny, wrongful appropriation and fraud within the DoD fall squarely within the authorities conferred by the IG Act on the DoD OIG; there is a reasonable belief that the financial records are relevant to the CID investigation; and there has been substantial compliance with the RFPA.</u>

Notwithstanding the fact that Berryman failed to make the required assertions, CID's

investigation represents a "legitimate law enforcement inquiry" under the RFPA, there is a

reasonable belief that the financial records sought are relevant to the CID investigation, and there has been substantial compliance with the RFPA.

1. CID's investigation represents a "legitimate law enforcement inquiry" under the RFPA.

Section 6(a)(4) of the IG Act specifically authorizes the DoD OIG to "to require by subpoena the production of all information, documents, reports, answers, records, accounts, papers, and other data in any medium (including electronically stored information, as well as any tangible thing) and documentary evidence necessary in the performance of the functions assigned by this Act . . . ." Those "functions assigned by this Act" include investigation of conduct that may constitute fraud, waste and abuse:

a. serving as "the principal advisor to the Secretary of Defense for matters relating to *the prevention and detection of fraud, waste, and abuse* in the programs and operations of the Department . . . ." § 8(c)(1) (emphasis added);

b. "initiat[ing], conduct[ing], and supervis[ing] such . . . investigations in the Department of Defense . . . as the Inspector General considers appropriate, . . ." § 8(c)(2);

c. "investigat[ing] *fraud, waste, and abuse* uncovered as a result of other contract or internal audits, as the Inspector General considers appropriate . . . ." § 8(c)(4) (emphasis added).

*See also* §§ 4(a)(2), (3), (5), 8(c)(3).

Larceny, misappropriation and frauds against the United States allegedly committed by an active duty member of the United States military would clearly constitute a form of "fraud, waste, and abuse" contemplated by the IG Act. Stated differently, if the DoD OIG could *not* investigate potential larceny, misappropriation and frauds against the United States by an active duty member of the United States military, the IG Act would be rendered meaningless.

- 11 -

Case law further reinforces the statutory authority the IG Act confers on agency offices of inspector general, such as the DoD OIG.  *See, e.g.*, *NASA v. Fed'l Labor Relations Auth.*, 527 U.S. 229, 256 (1999) ("Inspectors General . . . are provided a broad range of investigatory powers under the Act."); *Inspector General of U.S. Dep't of Agriculture v. Glenn*, 122 F.3d 1007, 1011 (11th Cir. 1997) ("The subpoena power, which the Inspector General appropriately invoked in this case, is vital to the Inspector General's function of investigating fraud and abuse in federal programs."); *Winters Ranch P'ship v. Viadero*, 123 F.3d. 327, 330 (5th Cir. 1997) ("Congress conferred very broad audit, investigatory, and subpoena powers on each Inspector General, as an independent and objective unit of the department or agency, to help promote efficiency and prevent fraud, waste, abuse, and mismanagement in federal government programs."); *Luttrell v. DoD*, No. 5:10-MC-19, 2010 WL 2465538, *2 (E.D.N.C. June 11, 2010) ("[T]he DoD's Inspector General has statutory authority to issue this administrative subpoena, and the purpose is proper—investigation of alleged criminal larceny by Movant."); *Nelson v. Department of Defense* Case No. 1:15mc-00034 at *4 (investigating larceny and fraud by active-duty military service members is with the DoD OIG's authority to investigate fraud, waste and abuse pursuant to the IG Act, and investigating servicemember of alleged unlawful receipt of military housing allowance is proper).

The IG Act's legislative history expounds upon the authorities that the Act confers.  In 1978, the Senate Committee on Governmental Affairs described how "the inspector general concept . . . provides a single focal point in each major agency for the effort to deal with fraud, abuse and waste in federal expenditures and programs." S. Rep. No. 95-1071, at 6 (1978), *reprinted in* 1978 U.S.C.C.A.N. 2676, 2681.  The Senate Committee explained that the OIG's "focus is in the way in which federal tax dollars are spent by the agency, both in

its internal operations and its federally-funded programs. . . . The Inspector [] General should

obviously be involved in identifying patterns and perpetrators of programmatic fraud."

S. REP. NO. 95-1071, at 27, *reprinted in* 1978 U.S.C.C.A.N. at 2702.  *See also* Department of

Defense Authorization Act, Pub. L. No. 97-252, § 1117, 96 Stat. 718 (1982); H.R. CONF.

REP. NO. 97-749, at 177 (1982), *reprinted in* 1982 U.S.C.C.A.N. 1569, 1582-83 (adding the

provisions of § 8 of the IG Act that specifically empowered the DoD OIG to investigate

fraud, waste, and abuse in DoD programs as it "considers appropriate").

> The Senate Committee drafting the IG Act further reinforced that "[s]ubpoena power

is absolutely essential" to the discharge of the IG's functions, and that without this power,

the IG "could have no serious impact on the way federal funds are expended."  S. REP. NO.

95-1071, at 34, *reprinted in* 1978 U.S.C.C.A.N. at 2709.

> The IG Act confers ample authority on the DoD OIG to issue the Subpoenas at

issue here.  Thus, CID's larceny and fraud investigation is a legitimate law enforcement

inquiry, as contemplated by § 3410(c) of the RFPA.

> Subpoenas issued pursuant to a criminal investigation fall squarely within the

RFPA's own definition of a law enforcement inquiry.  The RFPA defines "law enforcement

inquiry" as a lawful investigation "inquiring into a violation of, or failure to comply with,

any criminal . . . statute . . . ."  §3401(8).  UCMJ Articles 121 and 132 are such criminal

statutes.

> 2.  <u>There is a reasonable belief that the financial records are relevant
> to the CID investigation.</u>

UCMJ Article 121, Larceny and wrongful appropriation, one of UCMJ Articles Petitioner

is alleged to have violated, reads as follows:

(a) Any person subject to this chapter who wrongfully . . . *obtains, . . . from the possession of the owner . . . any money . . .*

(1) *with intent permanently to deprive or defraud* another person of the use and benefit of property or to appropriate it to his use . . . steals that property and is guilty of larceny; or

(2) *with intent temporarily to deprive or defraud* another person of the use and benefit of property or to appropriate it to his own use . . . is guilty of wrongful appropriation.

Emphasis added.

For a subpoena to withstand challenge, the requested documents must be relevant to a legitimate law enforcement inquiry.  Upon the determination that a legitimate law enforcement inquiry exists, the standard, becomes relevance.

"Once a person's connection to apparently illicit conduct has been shown, it is relevant to know whether that person's bank account contains evidence of such conduct.  What need be shown is not probable cause, but a good reason to investigate."  *Feiner v. U.S. Securities and Exchange Commission*, 914 F. Supp. 2d 474, 478 (S.D.N.Y. 2012) (quoting *In re John Doe*, 1990 WL 119321, at *2)). An oft-cited 5th Circuit case expands upon the broad concept of relevance in the context of an administrative subpoena:

> For purposes of an administrative subpoena, the notion of relevancy is a broad one. *Equal Employment Opportunity Commission v. Elrod*, 674 F.2d 601, 613 (7th Cir. 1982). An agency "can investigate merely on the suspicion that the law is being violated, or even just because it wants assurance that it is not." [*United States v. Morton Salt, Co.*, 338 U.S. 632, 642 (1950)]. So long as the material requested "'touches upon a matter under investigation,'" an administrative subpoena will survive a challenge that the material is not relevant. Elrod, 674 F.2d at 613 (quoting Motorola v. McLain, 484 F.2d 1339, 1345 (7th Cir. 1973), cert. denied, 416 U.S. 936, (1974)).

*Sandsend Fin. Consultants, Ltd. v. Federal Home Loan Bank Bd.*, 878 F.2d. at 882; Thomas v.

United States Dept. of Homeland Security, 876 F. Supp. 1, 9 n.5 (D.D.C. 2012)("An agency

can investigate merely on the suspicion that the law is being violated, or even just because it wants assurance that it is not.  So long as the material requested touches a matter under investigation.")(omitting internal quotes)).

As the Supreme Court stated, "[An agency] has a power of inquisition . . . which is not derived from the judicial function.  It is more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *Morton Salt, Co.*, 338 U.S. at 642-43.  *See also Sandsend*, 878 F.2d at 878 ("[A]n administrative agency's power to issue subpoenas as it performs its investigatory function is a broad-ranging one which courts are reluctant to trammel."); *Doyle v. U.S. Postal Service*, 771 F. Supp. 138, 141 (E.D. Va. 1991) ("Thus, it can be said that any subpoena issued for the purpose of promoting economy and efficiency or to prevent, detect, or prosecute fraud or abuse is enforceable.").

The Flores Declaration clearly establishes a reasonable belief that the records sought are relevant to the law enforcement inquiry because they "touch on a matter under investigation;" *i.e.,* whether Berryman violated the provisions of UCMJ Article 121 and Article 132.  *Sandsend*, 878 F.2d at 882.  *See* Flores Decl. ¶ 8.

### 3.   There is substantial compliance with the RFPA

The RFPA authorizes a federal government entity to obtain financial records through the use of an administrative subpoena otherwise authorized by law, only if:

> (1) there is reason to believe that the records sought are relevant to a legitimate law enforcement inquiry;

(2) a copy of the subpoena has been served upon the customer[7] or mailed
to his last known address on or before the date on which the subpoena
was served on the financial institution together with a notice outlining
the customer's rights under the RFPA to challenge the subpoena; and

(3) ten days have expired from the date of service of the notice or fourteen
days have expired from the date of mailing the notice to the customer
and within such time period the customer has not filed a Customer
Challenge in an appropriate federal district court.

§ 3405.  As it is clear that the records sought are relevant to a legitimate law enforcement

inquiry, the subpoena is in substantial compliance with the RFPA if a copy of the subpoena was

served upon or mailed to Berryman on or before the date that the Navy Federal Credit Union

was served, with a notice outlining the customer's rights under the RFPA to challenge the

subpoena. MCPO Berryman was served in person on December 18, 2015.  Flores Decl. ¶ 6.

Navy Federal Credit Union has not been served with the Subpoena pending the outcome of this

challenge.  Flores Decl. ¶ 5.    Included in the package that SA Augustyn provided to Berryman

were: "(1) Notices to Customer; (2) two Subpoenas; (3) Appendix A's; (4) Statement of

Customer Rights Under the Financial Privacy Act of 1978; (5) Instructions for Completing and

Filing Motion and Sworn Statement; (6) blank Motion Forms; (7) two Customer's Sworn

Statement for Filing a Challenge in the United States District Court; and (8) blank Certificates

of Service."  Flores Decl. ¶ 6.  Thus, Berryman was served with all required documents.  As

such, it is clear that the subpoena is in substantial compliance with the RFPA.

---

[7] The term "customer" is defined at §3401(5) as "any person or authorized representative of that
person who utilized or is utilizing any service of a financial institution, or for whom a financial
institution is acting or has acted as a fiduciary, in relation to an account maintained in the
person's name."  The term "person" is defined at §3401(4) as "an individual or partnership of
five or fewer individuals."

- 16 -

C.    Berryman's Objections are without merit.

Absence of Consent

Berryman does not explicitly challenge the subpoena's substantial compliance with the RFPA in his Motion; however, it could be argued that his first objection implicates compliance with the statutory requirement.  Berryman asserts that the account is a joint account and there has been no consent for disclosure.

A customer can consent to the disclosure of financial records.  Section 3404(a)(1).  The DoD IG is not relying here on consent of the customer to obtain the records.  There is no requirement that every joint owner or person with an interest in the account be a party. In this regard, the investigator has determined that Berryman may have an ownership interest in the account. Flores Decl. at ¶ 5(m).

Spousal Privilege

Berryman asserts that the spousal privilege bars disclosure of the financial records. Berryman does not describe how or in what manner the privilege applies.  In general,  the Supreme Court has several times refused to recognize a privilege when doing so would inhibit a federal investigation. *See United States v. Gillock,* 445 U.S. 360, 373 (1980)(refusing to recognize privilege for state legislators when doing so would "impair the legitimate interest of the Federal Government in enforcing its criminal statutes"); *Trammel v. United States,* 445 U.S. 40, 50 (1980) (refusing to extend spousal privilege when benefits would not "outweigh the need for probative evidence in the administration of criminal justice"); *compare*  In re Grand Jury Investigation, 431 F. Supp. 2d 584 (E.D. Va. 2006)(no authority to quash grand jury subpoena to former spouse where testifying would invoke privilege).  The spousal privilege is not implicated here.  The spouse will not be compelled to participate.  Moreover, spousal privilege is

inapplicable to the administrative subpoena.  Spousal privilege applies where spouses intend to

convey private messages to each other.  *See United States v. Byrd*, 750 F.2d 585, 587 (7th Cir.

1984); *Babenko v. FTC*, U.S. Dist. LEXIS 38774, at *2-5, (S.D. Ohio, Mar. 22, 2012) (citing

*Pereira v. United States*, 347 U.S. 1, 6 (1954); *United States v. Porter*, 986 F.2d 1014. 1018 (6th

Cir. 1993); Moreover, even if the subpoena was for Mrs. Berryman to provide banking

information, spousal privilege does not apply to "objective facts related to third parties,"

including bank documents. *Id.* (citing *United States v. Klayer*, 707 F.2d 892, 894 (6th Cir. 1983);

*Aetna Group USA, Inc. v. AIDCO Int'l Inc.*, 2011 U.S. Dist. LEXIS 61286 (S.D. Ohio, June 8,

2011)).

<u>Fourth Amendment</u>.

Berryman raises the "Fourth Amendment" without providing any explanation for his

perceived Fourth Amendment rights violation.  Thus, it is unclear whether Berryman perceives

the subpoenaing of these documents to be an unreasonable search or seizure, or whether he is

asserting that a probable cause warrant is required to access these documents.  Neither challenge

would have any merit.  Presumably, Berryman is referring to the provisions of 12 U.S.C. §3402

and §3406 which both reference the use of search warrants to obtain financial records.  Berryman

appears to interpret § 3402 as mandating the use of a search warrant in order for Government

authorities to obtain personal financial records.  A reading of §3402, however, makes it clear that

the five methods enumerated there are to be read in the alternative; *i.e.,* they describe five

different methodologies that Government authorities may choose from when attempting to

access an individual's financial records (§ 3406(a) provides that that the government "*may* obtain

financial records of a customer by means of a search warrant . . . .")(Emphasis added).  Thus,

while SA Flores could have obtained a series of search warrants which met the requirements of

§3406 in order to access Berryman's financial records in connection with his investigation, he chose instead to utilize a series of DoD IG Subpoenas; *i.e.,* administrative subpoenas, which are only required to meet the requirements of §3405.  Section 3405 contains no reference to search warrants.  Sections 3405 and 3406 are separate and independent procedures.  § 3402; *See Demary v. Fort Bliss Federal Credit Union*, 2000 WL 1708501 *2 (D. Kan. Sept. 18, 2000).  Thus, Berryman's objection is not viable because it attempts to impose a statutory requirement; *i.e.,* the obtaining of a search warrant, that simply does not exist when an administrative subpoena is utilized to access personal financial records.

No constitutional privacy rights are implicated by a subpoena for bank records. *United States v. Miller*, 425 U.S. 435, 443 (1976); *Robertson v. Cartinhour*, 2010 WL 716221 at * 2 (D. Md. 2010); *Sneirson v. Chemical Bank*, 108 F.R.D. 159, 161 (D. Del. 1985).

Gramm-Leach Bliley Act (GLBA)

. Berryman argues the subpoena cannot be upheld because it "seeks production of bank customers' 'nonpublic information' in contravention of GLBA."  Exhibit C.  .  While it is true that GLBA prevents "a financial institution… [from] disclos[ing] to a nonaffiliated third party any nonpublic personal information, unless such financial institution provides or has provided to the consumer a notice that complies with section 503," 15 U.S.C. § 6803, GLBA also provides for exceptions to this rule.  Specifically, §6802(e)(8) of GLBA provides that GLBA "shall not prohibit the disclosure of nonpublic personal information… to comply with Federal, State, or local laws, rules, and other applicable legal requirements; to comply with a properly authorized civil, criminal, or regulatory investigation or subpoena or summons by Federal, State, or local authorities; or to respond to judicial process or government regulatory authorities having jurisdiction over the financial institution for examination, compliance, or other purposes as

- 19 -

authorized by law."  Further, Section 6802(e)(5) contains an exception where there has been

compliance with the requirements of the RFPA., *viz*,  "to the extent specifically permitted or

required under other provisions of law and in accordance with the Right to Financial Privacy Act

of 1978, to law enforcement agencies  . . ." *See Chao v. Cmty. Trust Co.*, 474 F.3d 75, 87 (3rd

Cir. 2007) (explaining that in cases of administrative RFPA subpoenas, the subpoena is properly

authorized per the GLBA if the RFPA subpoena requirements are met); *see also, Marks v.*

*Global Mortgage Group, Inc*. 218 F.R.D. 492, 496 (S.D.W.Va. 2003) .

    <u>Rule 45 of the Federal Rules of Civil Procedure</u>.

    In his motion to Challenge, Berryman asserts that the Subpoena is defective because:

"distance to appear exceeds 150 miles travel;" "excessive burden;" "expense;" "a subpoena for a

witness to attend a hearing or trial must be issued from the district court where the hearing or

trial will be held.  FED. R. CIV. P. 45(a)(2)(A);" and "improper Service . . . Rules for issuing

and servicing a subpoena to a U.S. national or resident who is in a foreign country.  FED. R.

CIV. P. 45(b)(3); 28 U.S.C. § 1783  The named bank customer resides in Germany." Exhibit B.

    It appears that Berryman is arguing that his injury is that the distance to appear exceeds

150 miles in travel, there is an expensive burden in producing these documents, and that he was

subpoenaed improperly.  However, Berryman was not subpoenaed; he was simply notified of a

subpoena on Navy Federal Credit Union, located in Northern Virginia.  As such, Berryman is not

required to travel more than 150 miles, nor is any member of the bank required to travel more

than 150 miles as all that is required is the production of documents by the bank. There is no

excessive burden in the expense of the production of documents as Berryman is not asked to

produce the documents or pay the cost of such action.  Navy Federal Credit Union may be

reimbursed for the cost of producing the subpoenaed documents.  *See* 12 U.S.C. §3415.

Additionally, all that is requested in the subpoena served on Navy Federal Credit Union is the production of documents and not attendance at a hearing or trial.  In this regard, Berryman has failed to establish a concrete and particularized injury.  As such, he has no standing. *See  Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)(standing requires a showing by the moving party that they have a concrete and particularized injury in fact, that is actual and imminent, not conjectural or hypothetical; that is fairly traceable to the challenged action); see also *Robertson v. Cartinhour*, 2010 WL 716221 at *2 (D. Md. 2010)(owner of bank account had no standing to object to subpoena duces tecum issued to bank for bank records); *In re C and M Investments of High Point, Inc*., 2015 WL 66177 at *2 (Bankr. M.D.N.C. 2015) (same and cases cited); *United States v. Gordon*, 247 F.R.D. 509, (E.D.N.C. 2007)(holding that a party has no standing to challenge a subpoena issued to his or her bank seeking discovery of financial records because ban**k** records are the business records of the bank, in which the party has no personal right); *Robinson v. Cartinhour*, 2010 WL 716221 at *1 (D. Md. 2010).

## CONCLUSION

For the foregoing reasons, the government requests that the Court deny the Motion.

Dated:  January 27, 2016

Respectfully submitted,

DANA J. BOENTE
United States Attorney

By:

\_\_\_\_\_/s/_____
Gerard Mene
Assistant U.S. Attorney
Eastern District of Virginia
Counsel for the United States
2100 Jamieson Avenue
Alexandria, Virginia 22314
Telephone: (703) 299-3777
Facsimile: (703) 299-3983

Email: Gerard.Mene@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on  January 27, 2016, I will electronically file the foregoing with the

Clerk of Court using the CM/ECF system, which will then send a notification of such filing

(NEF) to the following:

        Nicholas S.
        Stockenbergweg 32
        73732 Esslingen, Germany.


        _____/s/_____
        Gerard Mene
        Assistant U.S. Attorney
        Eastern District of Virginia
        Counsel for the United States
        2100 Jamieson Avenue
        Alexandria, Virginia 22314
        Telephone: (703) 299-3777
        Facsimile: (703) 299-3983
        Gerard.Mene@usdoj.gov